# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| HUNTER'S EDGE, LLC, a limited liability company, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:14-CV-00249-MHT-WC |
| PRIMOS, INC., a corporation, | ) ) ) |
| Defendant. | ) ) ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendant's Motion for Summary Judgment (Doc. 38). On July 31, 2014, the District Judge entered an Order (Doc. 28) referring this matter to the undersigned Magistrate Judge "for consideration and disposition or recommendation, as may be appropriate, on all pretrial matters, including discovery . . . and dispositive motions." On October 24, 2014, Defendant filed its Motion for Summary Judgment, Supporting Brief and Memorandum (Doc. 39), and the Declaration (Doc. 40) of Will Primos in support of the Motion. On December 5, 2014, Plaintiff filed its Response (Doc. 45) in opposition to the Motion, along with the supporting Declaration (Doc. 46) of Jamie Bulger. On January 5, 2015, Defendant filed a Reply (Doc. 47) and a Supplemental Declaration (Doc. 48) of Mr. Primos in support of its Motion for Summary Judgment. The matter is fully briefed and is ripe for recommendation to the District

1

Judge.  For all of the following reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. 38) be GRANTED and the Complaint (Doc. 1) DISMISSED with prejudice.

## I.   BACKGROUND

On April 7, 2014, Plaintiff filed its complaint alleging two counts of patent design infringement by Defendant.  Plaintiff alleged that it is the owner of U.S. Design Patent Nos. D560 745 (entitled "Turkey Front Feather and Head Fan Decoy") and 746 (entitled "Turkey Feather Fan Decoy").  Plaintiff further alleged that Defendant is "infringing and/or inducing others to infringe by making, using, offering to sell and/or selling in the United States, and/or importing into the United States, products or processes that practice one or more inventions claimed in the Hunter's Edge, LLC[,] Patents."  Compl. (Doc. 1) ¶ 5.  Plaintiff alleges that Defendant has "profited through infringement" of Plaintiff's patents and that, due to such infringement, Plaintiff "has suffered and will continue to suffer damages."  *Id.*  Plaintiff further alleges that Defendant's infringement is "willful and deliberate," entitling Plaintiff to "enhanced damages and reasonable attorney fees and costs."  *Id.*

On September 4, 2014, the undersigned conducted a telephonic scheduling conference with counsel for the parties and subsequently entered the court's Initial Scheduling Order (Doc. 33), which established deadlines for the parties' initial disclosures and initial infringement and non-infringement, invalidity, and unenforceability contentions and accompanying document productions.  Defendant filed

the instant motion on the date its initial non-infringement, invalidity, and unenforceability contentions were due. Defendant argues that it is entitled to summary judgment on both of Plaintiff's claims of patent infringement on any of "three independent grounds[,]" including the following: 1) "the patents are invalid because they do not include a new, original design, but only photographic reproductions of actual turkey tail feather fans already existing in nature and widely known in the prior art[;]" 2) "the asserted patents are invalid as a matter of law because they are either anticipated or would have been obvious to one of ordinary skill in designing turkey decoys[;]" and 3) Defendant's products do not infringe Plaintiff's design patents because Defendant's products "are life-like, full sized, three-dimensional turkey decoys" which no ordinary observer would purchase thinking it to be Plaintiff's patented design. Def.'s Mot. (Doc. 38) at 1-2.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]  Only disputes about material facts will preclude

---

[1] On December 1, 2010, amendments to Rule 56 became effective. The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original). Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a). Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments. Accordingly, while the court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  In doing so, and to avoid summary judgment, the nonmovant "must do

4

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there

must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   STATEMENT OF UNDISPUTED FACTS

Each party has submitted a statement of undisputed facts. *See* Def.'s Br. (Doc. 39) at 7-25; Pl.'s Resp. (Doc. 45) at 3-4. The undersigned reproduces here only those facts essential to the recommended disposition of this case. Plaintiff Hunter's Edge, LLC, is a manufacturer of hunting accessories. Dec. of Jamie Bulger (Doc. 46) ¶ 2. Jamie Bulger is the founder, President, and CEO of Hunter's Edge, and runs the "day-to-day operations, including the development of new and innovative products, as well as the enforcement of intellectual property." *Id.* at ¶ 2. On February 6, 2007, Mr. Bulger filed U.S. Patent Application No. 29/272,287, which claimed a design for a flat, two-dimensional turkey feather and head fan decoy as represented by the image below:



Also, on February 6, 2007, Mr. Bulger filed U.S. Patent Application No. 29, 272,292, which claimed a design for a two-dimensional turkey feather fan without claiming the

6

turkey's head as represented by the image below:



On January 29, 2008, the Patent Office issued Design Patent No. D560,745 (the "745 patent," which is the turkey feather fan with head decoy) and Design Patent No. D560,746 (the "746 patent," which is the turkey feather fan decoy without the turkey's head). Both Design Patents have been assigned to Plaintiff Hunter's Edge, LLC.

In January of 2009, Mr. Bulger, representing Hunter's Edge, contacted Will Primos, the founder of Defendant Primos, Inc., a competitor in the game hunting supplies and accessories business, via letter for the purpose of conveying his belief that certain of Primos's products[2] infringed on the 745 and 746 patents. Mr. Bulger's letter suggested that Primos remit to Mr. Bulger some form of royalty as a remedy for its infringement or that the parties otherwise work to resolve the matter without the need for litigation. Mr. Bulger sent Mr. Primos another letter in March of 2009 which provided Mr. Primos with information about Hunter's Edge's patents and offered a summary of recent case law

---

[2] In pertinent part, and as will be discussed more thoroughly later in this Recommendation, Primos sells lifelike turkey decoys which include a three-dimensional turkey body and head with a turkey tail feather fan which may be attached to the body of the decoy.

discussing the test to be applied in cases alleging design patent infringement. In April of 2009, Primos responded to Mr. Bulger's letter, through its patent counsel, via a letter to Hunter's Edge's then counsel. In the letter, Primos articulated its belief that the 745 and 746 patents are invalid, and that the patents may be unenforceable due to Mr. Bulger's purported inequitable conduct in supposedly failing to disclose prior art turkey tail fan feather decoys to the Patent Office when he applied for the 745 and 746 patents. Thereafter, Mr. Bulger discontinued his efforts to press any claim for infringement against Primos until this suit was filed in April of 2014.

## IV.   DISCUSSION

Defendant contends that it is entitled to summary judgment because, *inter alia*, its products do not infringe on Plaintiff's 745 and 746 patents. Because the undersigned agrees with Defendant that, as a matter of law, the products identified by Plaintiff as infringing on its patent do not do so, and further finds that this argument is the most amenable to resolution at the summary judgment stage of proceedings, the undersigned pretermits substantive discussion of Defendant's other arguments in favor of summary judgment.

### A.   Legal Standard Applicable to Design Patent Infringement Claims.

In deciding whether a product infringes on the claimed design of a patent, federal courts apply the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). The "ordinary observer" test was first articulated in the Supreme Court's decision in *Gorham Co. v. White*, 81 U.S. 511 (1871), as follows: "[I]f,

in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 528.  Importantly, the test "applies to the patented design in its entirety, as it is claimed." *Crocs, Inc. v. Inter'l Trade Comm.*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  "In evaluating infringement, [the court is to] determine whether 'the deception that arises is the result of the similarities in the overall design, not of similarities in ornamental features in isolation.'" *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (quoting *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006)).  In other words, "[t]here can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar[.]" *Oddzon Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Under the "ordinary observer" test as described in *Egyptian Goddess*, "the burden of proof as to infringement remains on the patentee."  543 F.3d at 678.

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham*.  In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art . . . .  Where there are many examples of similar prior art designs, . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant

9

with the prior art.

*Id.*

A district court tasked with deciding a claim of patent infringement must first construe the claimed design so that it may compare it to the accused design, as required by *Gorham*. *Id.* at 679; *OddzOn*, 122 F.3d at 1404-05. However, there is no prescribed "particular form that the claim construction must take[,]" *id.*, and lower federal courts are cautioned against "excessive reliance on a detailed verbal description in a design infringement case." *Crocs, Inc.*, 598 F.3d at 1302. This is because "misplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole." *Id.* Because "claim construction must be adapted to a pictorial setting," *id.* (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002)), "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679. Rather, especially where the court "does not regard verbal elaboration as necessary or helpful," *id.*, the court should strive for simplicity in its claim construction. In other words, in construing Plaintiff's claimed design, this court should let the images of the claimed designs and accused products speak for themselves and should generally limit its verbal interpretation of the visual depictions of the claimed designs so as not to detract from the overall impression created by the claimed designs.

At least one other precept guiding a district court's claim construction should be

10

mentioned. Fundamentally, a "design patent protects only the novel, ornamental features of the patented design." *OddzOn*, 122 F.3d at 1405. As such, courts have long recognized that those aspects of a design which are functional, rather than purely ornamental, are not protected by the design patent and should not be included in the construction of the claim. *Id.* at 1405; *Richardson*, 597 F.3d at 1293-94. Accordingly, the court is limited in its claim construction "to identify the non-functional aspects of the design as shown in the patent." *OddzOn*, 122 F.3d at 1405.

### B.     Claims Construction

In the instant case, the court's task in construing Plaintiff's claimed designs is not particularly challenging. Previously in this Recommendation, the undersigned reproduced the two most clear and direct images of Plaintiff's two claimed designs, as they were included in Plaintiff's applications for the 745 and 746 patents. In its brief in support of summary judgment, Defendant offered a brief and simple construction of Plaintiff's claims to which Plaintiff lodged no objection in either its response in opposition to summary judgment or in the Declaration of Mr. Bulger. As such, the court adopts Defendant's proposed claim constructions as follows:

> [T]he '746 patent should be construed as designs comprising **a semi-circular shaped photographic reproduction of a natural turkey tail feather fan.** The '745 patent should be construed as designs comprising **a semi-circular shaped photographic reproduction of a natural turkey tail feather fan and turkey's head**.

11

Def.'s Br. (Doc. 39) at 37 (emphasis in original).[3]  These brief descriptions are sufficiently simplistic to comport with the Federal Circuit's concern that district courts avoid overly detailed verbal descriptions of claimed designs.  More importantly, they are consonant with the designs submitted in Plaintiff's applications for the 745 and 746 patents, as reproduced *supra*.  *See also* Ex. B to Pl.'s Resp. (Doc. 45-2) (depicting design claims in multiple images provided in 745 and 746 patent applications).

### C. Application of the "Ordinary Observer" Test

Having construed Plaintiff's claimed designs thusly, the undersigned must compare them to the accused products and apply the "ordinary observer" test of *Gorham*. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014) ("Determining infringement of a design patent requires comparing the drawings of the patented design to the appearance of the accused products.").  To enable this analysis, of course, Plaintiff must identify the precise Primos products which it alleges infringe on its patented designs.  However, the complaint does not allege any specific product or design by Primos has infringed on Plaintiff's claimed designs.  Nevertheless, Mr. Bulger's Declaration appears to identify Primos's "B-Mobile, Killer-B, and Dirty-B decoys" as the accused products for purposes of the infringement analysis.  *See* Bulger Dec. (Doc. 46) at ¶¶ 15, 19.  Defendant explains that the B-Mobile "is a molded plastic, life-size full-body

---

[3] The undersigned is not unmindful of the implications that adopting Defendant's proposed claims construction would have on Defendant's arguments about the invalidity of Plaintiff's patents.  Although Defendant's proposed claim construction would arguably compel a finding of patent invalidity, the undersigned emphasizes that this Recommendation adopts Defendant's proposed claims construction only for the purposes of completing the infringement analysis.

3D tom turkey decoy with a tail feather fan as a component of the overall product." Primos Dec. (Doc. 40) at ¶ 49.  "The Killer B is essentially a follow-up to the B-Mobile. The painted body of the Killer B brings out more incandescent colors in the body and more red in his head." *Id.* at ¶ 51 (quotation omitted).  "Like the B-Mobile, the Killer B is a molded plastic, life-size full-body 3D tom turkey decoy with a tail feather fan as a component of the overall product." *Id.*[4]

Plainly, the verbal descriptions pertinent to both the claimed designs and Primos's accused products indicate that the overall visual impressions created by the subject designs are wholly dissimilar.  Nevertheless, for the sake of context and clarity in comparing the designs under *Gorham*, the undersigned will append to this Recommendation side-by-side depictions of the accused products and Plaintiff's claimed designs.[5]

Upon viewing the pictorial depictions of Plaintiff's claimed designs and Defendant's accused products, the undersigned is of the conviction that no reasonable fact-finder could find that any ordinary observer could be induced to purchase one of the accused products thinking it to be Plaintiff's claimed design.  Plaintiff's claimed designs

---

[4] Although Mr. Bulger's Declaration alludes to the Dirty B as an additional accused product, Plaintiff did not accuse the Dirty B of infringement in its complaint or in its initial or final infringement contentions.  *See* Def.'s Reply Br. (Doc. 47) at 21-22.  Accordingly, Plaintiff has waived any claim that the Dirty B infringes on its patents.  Nevertheless, Defendant maintains that the Dirty B, which is also a lifelike molded plastic decoy of a turkey with a feather fan component, *see* Ex. X (Doc. 48-2) at 8, does not infringe on Plaintiff's patents "for the same reasons that the B-Mobile and the Killer B do not infringe." *Id.* at 22.

[5] These images are taken from Defendant's Final Non-Infringement, Invalidity, and Unenforceability Contentions, which is included in the record as Exhibit X, appended to the Supplemental Declaration of Will Primos (Doc. 48-2) at pages 3-6 and 7-9.

13

are flat, two-dimensional photographic reproductions of a turkey's tail feather fan both with and without a turkey head superimposed over the fan.  Defendant's accused products are lifelike three-dimensional model decoys featuring molded plastic bodies to which a component tail feather fan is attached.  Simply put, no ordinary observer—that is, a turkey hunter intending to purchase a turkey decoy—would confuse the accused products with Plaintiff's designs.

Rather than providing any evidence that an ordinary observer might confuse Defendant's accused products with his claimed designs, Mr. Bulger's Declaration confirms the opposite conclusion: the accused designs are so dissimilar to Plaintiff's claimed designs that ordinary observers in the marketplace, as well as retailers, easily grasped the marketplace evolution signaled by Defendant's accused designs and responded accordingly.  *See* Bulger Dec. (Doc. 46) at ¶ 14 (attesting that, when Primos began selling "their first 3-D full body decoy," "[h]unters were excited to purchase a 3-D turkey decoy, especially one, which included a FEATHER FAN, which was offered by Primos.  The Hunter's Edge 1-D FEATHER FAN DECOY was now obsolete in retailer's eyes, because Primos had included it in the box for attachment onto their 3-D turkey decoy.").

Plaintiff does not salvage its claim with Mr. Bulger's argument that, minus the component fan which he claims infringes on his design, "no turkey hunter alive would purchase" one of Primos's full body decoy products.  *Id.* at ¶ 19.  Plaintiff's analysis ignores this court's obligation to consider the two designs as a whole.  *OddzOn*, 122 F.3d

at 1405. The court may not consider simply whether certain ornamental features of the accused products are similar to the claimed designs. Rather, the court must consider "whether the patented design as a whole is substantially similar in appearance to the accused design." *Id.* Considering each of the designs as a whole, "[t]here can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." *Id.* As set out above and reflected in the images appended to this Recommendation, there can be no doubt that the overall appearance of the subject designs is markedly dissimilar. Plaintiff has presented no case law establishing that this court may find its claimed design is infringed by only a component part of the accused design rather than by considering the accused product as a whole.[6] Accordingly, this case

---

[6] The undersigned would be remiss not to discuss, at some point, the general insufficiency of Plaintiff's response to Defendant's motion for summary judgment. The court's Order (Doc. 42) instructing Plaintiff to respond directed Plaintiff to "address each of Defendant's material factual and legal contentions or explain why it is unable to do so." Given the relatively early stage in the proceedings at which summary judgment was sought, the court further instructed that, "[i]n the event that Plaintiff contends it is unable to present facts to justify any opposition to the motion, Plaintiff shall propose how the court may fairly and efficiently apply the provisions of Rule 56(d) of the Federal Rules of Civil Procedure in this instance."

Plaintiff's response does none of these things. Plaintiff's response to Defendant's sixty-nine page brief in support of summary judgment totals just over four pages. While the court does not mean to imply that insufficiency can be derived merely from the disparity in the number of pages, it is no great stretch to imagine that four pages simply is not enough to respond to all of the "material factual and legal contentions" packed into sixty-nine pages of briefing. Worse, still, is that the four pages of briefing are utterly devoid of meaningful analysis on any of the points of fact or law raised by Defendant. The response consists entirely of roughly one page describing the summary judgment standard of Rule 56, quotations from two statutes, a brief statement of undisputed facts about Mr. Bulger's efforts to secure his design patents, three sentences of "Argument," and a conclusion. Pl.'s Br. (Doc. 45).

Plaintiff's "Argument" is simply that "Defendant has failed to show that there is no genuine issue of material fact which entitles it to Summary Judgment." *Id.* at 4. Indeed, Plaintiff submits that "Defendant has by its very submissions, demonstrated that there are genuine issues to material facts. Summary Judgment is also improper at this time given that discovery has not yet begun." *Id.* Plaintiff does not cite to "particular parts of materials in the record" to support its assertion that there are material factual disputes. Fed. R. Civ. P. 56(c)(1)(A). Nor does Plaintiff "show" or even support its conclusory

marks an instance where "the claimed design and the accused design [are] sufficiently distinct that it [is] clear without more that the patentee [cannot meet] its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by *Gorham*." *Egyptian Goddess*, 543 F.3d at 678.

Because no reasonable fact-finder could find that an ordinary observer would purchase Defendant's accused products mistaking them for Plaintiff's claimed designs, Plaintiff cannot establish that Defendant's accused products have infringed on its patented designs and Defendant is therefore entitled to summary judgment on Plaintiff's claims of infringement. Accordingly, the undersigned Magistrate Judge hereby

RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. 38) be GRANTED and that this case be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **September 21, 2015**. Any objections filed must

---

assertion that the materials cited by Defendant "do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(B). Nor does Plaintiff, despite this court's clear instruction, indicate why it is unable to respond to Defendant's factual assertions for purposes of applying Rule 56(d). Notably, Plaintiff may not simply argue that summary judgment is premature because "discovery has not yet begun." Pl.'s Br. (Doc. 45) at 4. Rather, Rule 56(d) requires the nonmovant to show, by declaration or affidavit, that "it cannot present facts essential to justify its opposition" to the motion for summary judgment. Plaintiff has made no such showing. Most damning, however, is that Plaintiff has presented no legal argument about the three separate grounds on which Defendant seeks summary judgment. The complaint is devoid of analysis, or even a citation, of a single case applying design patent law.

At bottom, Plaintiff's response to Defendant's motion is nothing more than a conclusory denial of Defendant's factual and legal argument. This is plainly insufficient in opposing summary judgment. *See Ellis*, 432 F.3d at 1326 ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Nevertheless, the undersigned has endeavored to examine the record and review applicable law, and is satisfied that Defendant is entitled to summary judgment pursuant to Rule 56.

specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 8th day of September, 2015.

>  */s/* Wallace Capel, Jr.
>  WALLACE CAPEL, JR.
>  UNITED STATES MAGISTRATE JUDGE