IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HUNTER'S EDGE, LLC, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:14-cv-249-MHT-WC |
| | ) |
| BUSHNELL HOLDINGS, INC. | )   <u>UNDER SEAL</u> |
| d/b/a PRIMOS, | ) |
| | ) |
|    Defendant. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court is the District Judge's Opinion and Order (Doc. 65) adopting the undersigned's Recommendation (Doc. 62) that Defendant's Motion for Attorney's Fees (Doc. 56) be granted, and referring this matter back to the undersigned Magistrate Judge "for recommendation on the amount of attorneys' fees" to be awarded. Subsequently, Defendant Primos, Inc. ("Primos" or "Defendant") filed their Brief Supporting Reasonableness of Attorneys' Fees (Doc. 68), and Plaintiff Hunter's Edge, LLC ("Hunter's Edge" or Plaintiff") filed their Response (Doc. 69). Thus, the matter is fully briefed and is ripe for recommendation to the District Judge. For all of the following reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Plaintiff shall pay Defendant's reasonable attorneys' fees in the amount of $32,224.00.

**I.  DISCUSSION**

Having already determined that Defendant is entitled to attorneys' fees due to the "exceptional" nature of this case, the Court must determine if the fees are reasonable. The

starting point in any "reasonable fee" determination is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433–34 (1983). The resulting figure is known as the "lodestar." *Pa. v. Del. Valley Citizens Council II,* 483 U.S. 711, 745 (1987) ("*Delaware II*"). The lodestar may thereafter be enhanced or reduced based on the results obtained or the risk of nonpayment. *Delaware II,* 483 U.S. at 745; *Pa. v. Del. Valley Citizens Council I,* 478 U.S. 546 (1986) ("*Delaware I*"). Where the objective sought was in fact obtained, the full lodestar amount should be awarded. *Norman v. Hous. Auth. of City of Montgomery,* 836 F.2d 1292 (11th Cir. 1988). "If the result was excellent, then the court should compensate for all hours reasonably expended." *Id.* at 1302 (citing *Popham v. Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987)).

In considering whether to adjust the lodestar amount upward or downward, a court may wish to consider any of the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Hensley,* 461 U.S. at 436. Enhancement of the lodestar, however, should only be made in exceptional cases where need and justification for such enhancement are readily apparent and supported by clear evidence of record. *Delaware II,* 483 U.S. at 728; *see also Norman,* 836 F.2d at 1302. A downward adjustment of the lodestar may be required when the party being awarded fees achieved only limited success or spent time on unsuccessful and unrelated claims. *Hensley,* 461 U.S. at 436. A further downward adjustment may be required for "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 434.

Defendant seeks a total of $144,502.50 in attorney's fees for 479.9 hours of work from six attorneys and one paralegal whose experience, skill, and hourly rate each differed (average ranging from $225.00 for the least experienced attorney to $425.00 for the most experienced attorney, and $175.00 for the paralegal).[1]  In particular, Defendant seeks fees for: (1) Brett L. Foster, a partner with approximately 24 to 27 years of experience during the relevant period who billed 179.5 hours at an average rate of $401.00 per hour; (2) L. Grant Foster, a partner with approximately 25 to 28 years of experience during the relevant period who billed 13.4 hours at an average rate of $425.00 per hour; (3) Phil W. Harris, an associate with approximately 2 and 5 years during the relevant period who billed 236.9 hours at an average rate of $225.00 per hour; (4) Ginger Utley, an associate with approximately 7 to 10 years of experience during the relevant period who billed 47.0 hours at an average rate of $284.00 per hour; (5) Sherri L. Stucki, a paralegal who billed 2.4 hours at an average rate of $175.00 per hour; (6) Mark A. Miller, a partner who billed 0.4 hours at an average rate of $395.00 per hour; and (7) Tamara L. Kapaloski, an associate who billed 0.3 hours at an average rate of $345.00 per hour. *See* Doc. 68-3 at 4–7.

These attorneys performed a variety of services on the case, including, among others: reviewing the infringement allegations; preparation, review, and filing of the Answer, the initial and final infringement contentions, and other documents filed in the lawsuit; preparing and exchanging initial disclosures; discussions and correspondence with Defendant Primos, Inc. and local counsel; preparation and filing of the Defendant's motion

---

[1] The Court notes that most of the attorneys' hourly rates varied throughout the representation. *Cf.* Invoice No. 1315373 (charging $400.00 per hour for Brett L. Foster) with Invoice No. 1549261 (charging $425.00 per hour for Brett L. Foster).

3

for summary judgment and the reply in support; and preparation and filing of the Motion for Attorneys' Fees, as well as the brief in support of the reasonableness of the fees in question. Docs. 68 and 78.   The Court has some concerns that the attorneys have provided redundant and excessive services and questions the reasonableness of the hourly rates Defendant seeks.

First, in determining the reasonable hourly rate for the purpose of an attorneys' fees motion, the burden is on the moving party to establish the prevailing market rate, which is the rate charged in the community by lawyers of reasonably comparable skill, experience, and reputation for similar services. *Blum v. Stenson,* 465 U.S. 886, 895–96, n.11 (1984); *NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir. 1987); *Gaines v. Dougherty County Bd. of Educ.,* 775 F.2d 1565, 1571 (11th Cir. 1985); *see also Simpleville Music v. Mizell,* 511 F. Supp. 2d 1158, 1162 (M.D. Ala. 2007) (citations omitted).   "The relevant community for determining the range of prevailing market rates 'is that of the place where the case is filed.'" *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1256 (M.D. Ala. 2000) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (rejecting the plaintiffs' argument that "the relevant market for the hourly rate to be used in the computation of the lodestar figure" was Atlanta, Georgia, the situs to which the case was transferred, and holding that the district court did not err in examining hourly rates of attorneys in Macon, Georgia, the city where the cases was filed)).   Since this case was filed in the Middle District of Alabama, Southern Division, the Court finds that Montgomery, Alabama, and its surrounding area is the relevant legal community that governs. *See Black v. M.G.A., Inc.,* 51 F. Supp. 2d 1315, 1321 (M.D. Ala. 1999) (finding

4

that the relevant legal community for a case filed in the Middle District of Alabama, Southern Division, was Montgomery, Alabama, and declining to consider fees outside the district).

"The decision regarding the appropriate hourly rate may be made either by analyzing the affidavits submitted by counsel or, if this documentation is insufficient, by relying upon the court's expertise." *Norman,* 836 F.2d at 1303; *Avirgan v. Hull,* 705 F. Supp. 1544, 1549 (S.D. Fla. 1989). Satisfactory evidence of the market rate, however, requires more than the mere affidavit of the attorneys performing the work. *Blum,* 465 U.S. at 896. Also insufficient is testimony that a given fee is reasonable; evidence must be of rates actually billed and paid. *Hensley,* 461 U.S. at 439 n.15. This evidence may be adduced from charges of lawyers under similar circumstances or by opinion evidence. *Norman,* 836 F.2d at 1299. When analyzing the market rates being attested to, the Court may consider any of the twelve *Johnson* factors referred to previously. *Delaware I,* 478 U.S. at 564–69. One of those factors, the hourly rate normally charged by the applicant's counsel, has been deemed the logical starting place in any rate determination. *Vaughns v. Bd. of Educ.,* 598 F. Supp. 1262 (D. Md. 1984), *aff'd* 770 F.2d 1244 (4th Cir. 1985); *Zeffiro v. First Pa. Bank, N.A.,* 574 F. Supp. 443, 447 (E.D. Pa. 1983), *aff'd without opinion,* 746 F.2d 1469 (3d Cir. 1984); *see also Fla. Pawnbrokers v. Ft. Lauderdale,* 711 F. Supp. 1084, 1086–87 (S.D. Fla. 1989). Also considered probative are the rates billed in similar lawsuits and the relative skill of the attorneys involved. *Norman,* 836 F.2d at 1299.

As mentioned above, Defendant seeks average hourly rates ranging from $225.00 per hour for the least experienced attorney, up to $425.00 per hour for the most experienced

5

attorney. Doc. 68-3 at 7.  While the Court recognizes that the rates provided are likely reasonable in Salt Lake City, Utah, and notes the highly specialized training and knowledge required of counsel in conducting a federal patent action, the Court cannot ignore the fact that it appears counsel's requested rates are based on the markets in which they practice and not the prevailing market rate, which, in this case, is that of Montgomery, Alabama. *Simpleville Music,* 511 F. Supp. 2d at 1163 (citing *Black,* 51 F. Supp. 2d at 1320–21 ("The rate of attorney's fees is that of the place where the case is filed.") (quoting *Cullens,* 29 F.3d at 1494).  "In the Middle District of Alabama, skilled lawyers with twenty years or more experience may expect to receive $300 [to $375] an hour, lawyers with ten years or more experience may receive between $200 and $250 an hour, and associates may expect to receive $150–185 an hour."[2] *Morrison v. Veale*, 2017 WL 6388960, at *4–5 (M.D. Ala. Dec. 14, 2017) (citing *Weekes-Walker v. Macon Co. Greyhound Park, Inc.*, 31 F. Supp. 3d 1354, 1360 (M.D. Ala. 2014); *Alfa Corp. v. Alfa Mortg., Inc.*, 560 F. Supp. 2d 1166, 1180 (M.D. Ala. 2008); *Simpleville Music*, 511 F. Supp. 2d at 1163; and *Gaylor v. Comal Credit Union*, 2012 WL 1987183 (M.D. Ala. June 1, 2012)).

Applying these ranges here, the Court limits the rates requested to what is reasonable in Montgomery market. Thus, the Court limits (1) Brett L. Foster's rates to $375.00 per hour; (2) L. Grant Foster rates to $375.00 per hour; (3) Phil W. Harris' rates to $160.00 per hour; and (4) Ginger Utley's rates to $185.00 per hour.[3]

---

[2] While findings of other courts (even courts in this district) with regard to attorney's fees are not binding, the undersigned finds that these rates are accurate within this district.

[3] Hours were also billed for Sherri L. Stucki, Mark A. Miller, and Tamara L. Kapaloski; however, as further discussed below, their hours were struck in their entirety.

Next, the Court must determine the number of hours reasonably expended on the litigation. As previously stated, in evaluating Defendant's attorneys' fees, the Court applies the "lodestar" method of multiplying the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services. *Hensley*, 461 U.S. at 433–34; *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. To satisfy this burden, the fee applicant shall provide: (1) specific and detailed evidence from which it can determine the reasonable hourly rate for the community and (2) records evidencing time spent on different claims and setting out with sufficient particularity the general subject matter of the time expenditures so that the court can assess the time claimed for each activity. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

The Court has carefully reviewed the time expenditures submitted by the Defendant. Doc. 78. Defendant seeks a total of $144,502.50 in attorneys' fees for 479.9 hours of work completed by six attorneys and one paralegal. Plaintiff argues that "[t]he amount of hours expended by defense attorneys on this litigation was not reasonable and included duplication of efforts, excessive time devoted to research and briefing given the simple nature of the case, and the fact that it was disposed of very quickly." Doc. 70 at 1. The Plaintiff further avers that Defendant's attorneys' fees should be reduced due to the "simple nature of this litigation," which involved extremely minimal exchange of discovery (due to the fact that this case involved legal, rather than factual issues), no use of expert

7

witnesses, and no trial or trial preparation. Indeed, this case presented pure questions of law and simply involved an exchange of dispositive motions on the legal issues." Doc. 70 at 3, 5. Additionally, the Plaintiff notes that this case only involved two hearings that each lasted less than fifteen minutes. Doc. 70 at 5.

A party moving for attorney's fees must exercise "billing judgment." *Hensley,* 461 U.S. at 434. Billing judgment means that the attorneys "must exclude from their fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*'" *Am. Civil Liberties Union of Ga.*, 168 F.3d at 428 (quoting *Hensley,* 461 U.S. at 434; *Norman,* 836 F.2d at 1301) (emphasis in original). "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.*

Upon review of Defendant's detailed time expenditures, the undersigned conducted "a task-by-task examination of the hours billed." *Id.* at 429 (citing *Loranger v. Stierheim,* 10 F.3d 776, 782–83 (11th Cir. 1994) (noting that 100 hours for the task of preparing a fee request in the case was excessive); *Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996) (disallowing redundant hours billed for the task of deposing witnesses)).

The Court agrees with the Plaintiff and finds that counsel for Defendant has provided redundant and excessive services. *See Am. Civil Liberties Union of Ga.*, 168 F.3d at 432 (citing *Hensley,* 461 U.S. at 434) ("Redundant hours must be excluded from the reasonable hours claimed by the fee applicant.") Although Defendant provided a

8

declaration attesting to the reasonableness of the time spent and a statement that they are in line with the usual case of this nature, "giving weight to sworn statements of fee applicants does not mean accepting those statements as gospel." *Id.* at 430.

While Defendant compares this case to the average patent case, this is certainly an uncharacteristic patent case. The Court recognizes that the average patent case is extremely complex requiring specialized knowledge and experience, but this is no such case. This case did not involve discovery beyond a simple exchange of initial disclosures, nor did it involve any factual dispute. It did not require any specialized knowledge, and it did not require review of a complex process or product; thus, there was no use of expert witnesses. The extent of the patent infringement review rested primarily upon reviewing and comparing photographs and website product listings. Finally, the case was resolved on summary judgment as a question of law, without necessitating a trial or any trial preparation.

Upon completing a task-by-task examination of the hourly billing statement, the Court noticed several duplicative entries, unnecessary entries, and more time spent on tasks than should have been required to complete the relevant task. For example, Defendant includes entries totaling 25.1 hours[4] related to preparation of the Rule 26(f) Report. The parties set dates on eleven entries, primarily related to exchange of initial disclosures, infringement contention, and claim construction, and all the remaining dates were simply

---

[4] Defendant's line item hourly billing statement, throughout, includes various entries grouped together in one line item with a totaled hourly sum. The Court is wholly unable to determine how much time was spent on each individual task contained within each of these. Thus, the Court is considering the hours billed under the most substantive task reported.

9

deadlines imposed based upon a number of days following or prior to other triggering events. *See* Doc. 26. Additionally, Plaintiff had filed a motion for extension of time to file the Rule 26(f) Report, to which Defendant filed a 3-page response. *See* Docs. 20–21. Billing 25.1 hours to complete the simple task of a Rule 26(f) Report is clearly excessive and unreasonable.

The most egregious example would be Defendant's hourly billings for their motion for summary judgment and, particularly, their reply brief in support. Although the Court notes that Defendant's motion for summary judgment was certainly thorough and well-written, 175.9 hours is excessive and unreasonable. However, the 94.7 hours billed to draft Defendant's reply brief is egregiously excessive. *See* Doc. 47. The Court has already expressed its opinion on Plaintiff's response brief to the motion for summary judgment:

> Plaintiff's response to Defendant's sixty-nine page brief in support of summary judgment totals just over four pages. While the court does not mean to imply that insufficiency can be derived merely from the disparity in the number of pages, it is no great stretch to imagine that four pages simply is not enough to respond to all of the "material factual and legal contentions" packed into sixty-nine pages of briefing. Worse, still, is that the four pages of briefing are utterly devoid of meaningful analysis on any of the points of fact or law raised by Defendant. The response consists entirely of roughly one page describing the summary judgment standard of Rule 56, quotations from two statutes, a brief statement of undisputed facts about Mr. Bulger's efforts to secure his design patents, three sentences of "Argument," and a conclusion. Pl.'s Br. (Doc. 45).

Doc. 53 at 15 n.6. In reviewing Plaintiff's response containing a total of three sentences of argument and a five-and-a-half-page affidavit, Defendant correctly noted that "Hunter's Edge failed to address any of the material factual allegations and most of the legal contentions Primos presented." Doc. 47 at 11. Despite recognizing that Plaintiff's

10

response was deficient, Defendant used their "billing judgment" and decided to file a twenty-two-page reply accompanied by a new thirteen-page affidavit. The bulk of the reply brief is simply rehashing each argument made in their motion for summary judgment, followed by a sentence indicating Plaintiff's failure to properly respond. Defendant's reply consisted of excessive, unnecessary, and redundant services rendered.

Additional examples involve various entries for unnecessary or excessive tasks completed and billed. The Court, generally, notes an excessive amount of time billed in the preparation of all the affidavits submitted throughout the litigation, excessive and redundant amounts of billing entries for "strategizing" and conferencing with attorneys within the firm who also billed for the same task, and work performed by more than one partner at the law firm. As an example of misusing their "billing judgment," Defendant filed an unsolicited response to Plaintiff's objection to the undersigned's Recommendation that Defendant's motion for attorney fees should be granted, the content of which consisted of asserting to the court that the Plaintiff's objection to the recommendation did not object to the award of attorney's fees. *See* Docs. 63–64. The Court was fully capable of determining that Plaintiff's opposition amounted to an objection to the reasonableness of the fees as opposed to simply whether attorney's fees should be awarded in the first instance. It was wholly unnecessary to file such a response, particularly considering there was no briefing order issued directing the Defendant to file a response.

Further, counsel for the Defendant also billed for two separate entries for holding conferences with co-counsel to discuss whether they should call the Undersigned's chambers regarding the "lengthy pendency of the motion," neither of which resulted in

11

contacting chambers. *See* Doc. 78-1 at 74, 77. As a final egregious example of an unnecessary and excessive billing entry, after partner Brett L. Foster stated that he reviewed the court docket and his emails and found that no objection had been filed by the Plaintiff to the Undersigned's Report and Recommendation on the summary judgment motion, he still requested that associate Phil Harris also review the court docket to confirm that no objection was filed; Harris did so and also billed for the same task. *See* Doc. 78-1 at 58–59. A partner with over twenty years of experience should be capable enough to determine on his first attempt whether the docket reflects if an objection was filed. It is unnecessary and redundant to assign an associate to review the exact same docket moments later and report back his findings.

As a result of the Court's task-by-task examination of the hourly billing statement and finding "'excessive, redundant, or otherwise unnecessary [hours],'" the Court must reduce Defendant's claimed hours. *Am. Civil Liberties Union of Ga.*, 168 F.3d at 428 (quoting *Hensley,* 461 U.S. at 434; *Norman,* 836 F.2d at 1301) (emphasis in original). The Court reduces Brett L. Foster's hours from 179.5 hours to 31.2 hours, for a total of $11,700; L. Grant Foster from 13.4 hours to 4.8 hours for a total of $1,800; Phil W. Harris from 236.9 hours to 75.4 hours for a total of $12,069; Ginger Utley from 47.0 hours to 36.0 hours for a total of $6,500; Sherri L. Stucki from 2.4 hours to 0.0 hours; Mark A. Miller from 0.4 hours to 0.0 hours; and Tamara L. Kapaloski from 0.3 hours to 0.0 hours. Thus, the Court finds that the reasonable fee owed to Defendant is $32,224.00 for 147.4 hours of work on this case.

After determining the lodestar, the court then addresses whether the award should be adjusted upwards or downwards. *Morrison*, 2017 WL 6388960, at *3 (citing *Delaware I,* 478 U.S. at 565–66; and *Ass'n of Disabled Ams.*, 469 F.3d at 1357, 1359 (11th Cir. 2006)). In conducting this inquiry, the court is guided by the twelve factors set out in *Johnson*, 488 F.2d at 717–19. *See Bivins v. Wrap It Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Morrison*, 2017 WL 6388960, at *3. These twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Bivens,* 548 F. 3d at 1350 n.2 (citing *Johnson*, 488 F.2d at 717–19). The Court has considered these twelve factors and finds that no upward or downward adjustment is necessary. Thus, based on the amount of time and hourly rates approved by the Court, as set out above, an award of attorney's fees in the amount of $32,224.00 is appropriate in this case.

## II.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that an award of attorney's fees in the amount of $32,224.00 is appropriate in this case.

It is further ORDERED that on or before **June 21, 2019**, Plaintiff may file an objection to the Recommendation. Any objection must specifically identify the findings in the Recommendation to which Plaintiff objects. Frivolous, conclusive or general

objections will not be considered by the District Court.  Plaintiff is advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 7th day of June, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE